Stanley Unuski
vs.                          No. 66934
The Cole Teaming Company

RESCRIPT

July 13, 1926

CAPOTOSTO, J. The plaintiff in an action for negligence recovered a verdict for $3500. The defendant moves for a new trial upon the usual grounds.

The case involves a collision on November 14, 1925, between a motorcycle with a two-passenger side-car, driven in a southerly direction by the plaintiff, and a two-horse low-gear of the defendant, driven northerly on Louisquisset Pike near the beginning of the cement portion of the State Road in the town of North Providence.

The side-car was attached to the right of the motorcycle. It was a dark and rather windy evening. The collision took place about opposite the ·path leading to the Hurdis homestead and at the end of a slight left curve as one proceeds in a southerly direction. The motorcycle was going down grade, the horse-driven low-gear up grade.

The plaintiff's claim is that he started from his home in Woonsocket with a friend, Jan. Zurivcyski, in the side-car, for the home of Zurivcyski's sister in Pawtucket; that he went through the city of Woonsocket with his head-light dimmed and that when he reached the Woonsocket or northerly end of Louisquisset Pike, he put on his "big" light, which would, in his estimation, illumine the road for a distance of about 50 feet in front of him; that he proceeded, looking straight ahead at all times, along his right side of the highway at 25 miles an hour, a rate of speed which he never exceeded during the nine years that he had operated a motorcycle; that at the "little curve" just about where the accident happened, his light was deflected off the road by reason of the curve; that he saw nothing in front of him; that he struck something; that he did not know what he struck; that he was rendered unconscious and that when he came to he found himself in the Rhode Island Hospital.

The evidence of Jan Zurivcyski as to what happened up to the time of the impact is almost identical. His statement of what happened to him and what he did after the accident, weighed in the light of all the evidence, leads one strongly to the conviction that he believed that immediate departure from the scene was more to his advantage than to remain with a seriously wounded friend.

William A. Batchellor, testifying for the plaintiff, said that on his way to Woonsocket he came near running his automobile into a pair of horses which were swung diagonally across the road from a standing low-gear.

The defendant denied that the horses of the low-gear were swung across the path of the plaintiff and says that the plaintiff, proceeding at a high rate of speed, cut the curve, crashed into and broke the neck-yoke of the horses, landed motorcycle and all in between the two horses, and that the breaking of the neck-yoke by the force of the impact caused the animals to swing to their left.

While the plaintiff, through himself and his witnesses, sought to establish that there was no light of any kind on the low-gear,. the defendant said that there was a small or boy scout lantern attached to the forward part of the vehicle which was loaded with baled hay.

The motorcycle was badly damaged and the side-car practically demolished. The plaintiff suffered various fractures of the bones of the face, resulting in some noticeable disfigurement.

With reference to the defendant's negligence, the evidence, as a whole, presents a question of fact which might fairly be decided either way by the jury. It might say that the low-gear at the time of the accident was properly on its right side of the road about to come to a stop with the horses directly ahead of the vehicle, or it might find that the low-gear had in fact stopped on an up grade and that, to better hold the position of the vehicle and and its load on the highway, the horses had been swung thoughtlessly to a more or less extent across the path of travel proceeding in the opposite direction.

When we come to the question of due care, the plaintiff's conduct just before the accident is deserving of serious consideration. The plaintiff does not rest his case upon a sudden emergency. He does not claim— and if he did it would not be sup-

ported by the evidence, especially if we accept the testimony of Mr. Batchellor—that the horses were swung across his path at a time when he was so close to them that, in spite of every reasonable effort on his part, he could not avoid the accident, nor does he say that a stationary object, whatever it may have turned out later to be, suddenly loomed in front of him directly across the portion of the road over which he was travelling at a time when he could do little, if anything, for his own protection. His claim is that he saw nothing at all in front of him; that he felt an impact, was seriously injured and came to in the hospital. He attempts to excuse his not seeing what necessarily must have been visible for at least some appreciable distance ahead of him, by saying that the rays from his one light on the motorcycle were deflected to the right of the road in making the curve.

On approaching the scene of the accident the plaintiff must be held to have had reasonably in mind that he was on a public highway open to travel by vehicles of all sorts; that he was then proceeding along a down grade and actually rounding a curve, and that the light from his headlight would be more or less deflected from the travelled way in proportion to the extent of the curve that he was rounding. His own and his companion's testimony established the fact that just before the accident he did nothing to so regulate his conduct as to make it possible for the headlight to throw its light where it was supposed to cast its rays, namely, upon the travelled portion of the road over which he intended to proceed. With an experience of nine years' driving behind him, he saw fit to ad-

vane at the rate, as he says, of 25 miles an hour over a highway which had, temporarily at least, become obliterated from his vision by reason of the contour of the road. It may be pertinent to note that the plaintiff's motorcycle, to which the headlight was attached, was nearer to the center of the road than the two-passenger side-car which was to his right Whatever deflection, if any, might have been caused by reason of the curve was to a certain extent neutralized by his position on the highway.

If a slight curve will throw a motorcycle's light to the side and off the roadbed so as to leave the highway ahead in complete darkness, then it becomes the driver's duty to so control his machine as to proceed, if at all, with the greatest caution. If, on the other hand, the light reflected to some extent, whatever that distance might be, upon the travelled way, then the operator should have seen what reasonably could have been seen within that distance and have done whatever reasonably could have been done under the stress of unexpected conditions to save himself from bodily harm. The plaintiff in this case saw nothing and did nothing. Accepting his own version of the occurrence as true, we find a dangerous situation created by the negligent act of the defendant's servant, further complicated and intensified by the plaintiff's own heedless conduct in proceeding at considerable speed along an unlighted way without taking any precaution for his own safety.

The finding of the jury as to the plaintiff's due care is supported neither by the weight of the evidence nor by reason.

Motion for new trial granted.

For Plaintiff: Greene, Kennedy & Greene.

For Defendant: Frederick A. Jones.